Call the second case. Foley v. American Zurich Insurance. Please step forward and identify yourselves. Good morning. I'm Julie Lerman. I'm counsel for Timothy Foley, the plaintiff appellant, and co-counsel Ellie Hellen. I'm Terry Welch, counsel for Hellen, American Zurich Insurance Company. All right. Since there are three cases up today, we try to keep you within the time frame. So make your points and move on, please. Usually we let you meander a little, but today we're kind of stuck. So proceed. May it please the court. Counsel, this is an insurance coverage dispute and requires the interpretation of a policy issued by the defendant appellee, American Zurich Insurance Company. The plaintiff appellant, Timothy Foley, suffered damage to his property caused by the back-up and overflow of a municipal sewer. Zurich paid the policy sublimit for sewer back-up and overflow coverage, but denied coverage for debris removal and replacement of construction forms on the basis that the loss was a covered cause of loss. We believe that these additional coverages are applicable to Mr. Foley's loss. At the core of this dispute is the definition of a covered cause of loss under the policy. Zurich admits if the loss was a covered cause of loss, then these coverages for debris removal and construction forms would be applicable to the loss and the proper interpretation of this policy is that the loss is a covered cause of loss and that Mr. Foley is entitled to the additional recovery that he seeks. I'm sure your honors are well aware of the facts. In the interest of time, I can briefly restate them in the procedural history or I can go directly to the argument. I'd go to the argument. I think we all have read their briefs. Whether the loss is a covered cause of loss is again the crux of this case. The determination of this question requires the interpretation of the terms and provisions of this policy. As is evident from the briefs on both sides, no Illinois case law could be found that directly addresses the policy provisions at issue in this case. Both my opposing counsel and I have cited certain out-of-state cases to support our respective arguments which have been discussed in detail in the briefs. We do have for precedent in Illinois though well-established principles of policy interpretation as set forth by Illinois courts. These principles include an insurance policy is construed giving effect to every provision because it's assumed that every provision was intended to serve a purpose. If the words in the policy are unambiguous when given their plain and ordinary meaning, they must be applied as written. The function of the court is to ascertain and give effect the intention of the parties as expressed in the policy. It's with these guiding principles in mind that we interpret the provisions of the policy here. We present two basic arguments. First, the policy provisions here are unambiguous and must be applied as a cover cause of loss. Second and in the alternative, our interpretation of the terms of the policy are at least a reasonable one. Because it's a reasonable one, even if this court determines that Zurich's interpretation is also a reasonable one, the terms of the policy must be considered ambiguous and must be construed in favor of Mr. Foley and against Zurich to conclude that there is a cover cause of loss. Both of these arguments, though, reach the same result, that coverages for construction forms and debris removal are applicable to provide additional recovery for the loss. The court, then, is tasked with interpreting the relevant provisions of the policy. There are six provisions of the policy that have to be examined. The coverage grant, the definition of a covered cause of loss, the exclusion and exception language for sewer backup, the additional coverage for debris removal, and the additional coverage for construction forms. The starting point is the coverage grant, which is found in the very first sentence of Section A of the coverage form under the main heading coverage on page 822 of the appendix. The real question we have here is the exclusion we have here for water damage. Yes. And then they say, well, water damage is excluded, except when it comes to overflow. Yes. But then they, according to the policy, the overflow damage is limited to $25,000 for overflow. Under the overflow additional coverage, under this additional coverage. So they're arguing, then, that even though there is scaffolding and debris removal, that's covered by the $25,000 overflow limit. Why isn't that? That is not how those additional coverage are written, and that if you look at the additional coverage language, the additional coverage for sewer backup and overflow says it's $25,000 for this additional coverage. Now, mind you, debris removal coverage is available if there was a fire and your house burned down, you get to rebuild your house, you also get debris removal. This is a builder's risk policy. When this loss occurred, there was a foundation hole in the ground. Construction forms are temporary, like a scaffolding, like as if, you know, there was scaffolding erected. What this policy provides is that you get the coverage for the sewer backup and overflow. You get to rebuild your foundation. You get to re-pour what was poured. But guess what? You also get the cost that you incurred to dig out the wet mud, remove these floating construction forms that had been destroyed, and then you get additional coverage. These aren't for temporary things. These don't become part of what your building is. These aren't permanent. This is in the policy for a reason. It says for these temporary things, you get additional coverage. And this is all defined. Every single one of these is this additional coverage. It doesn't say, and no other coverages apply. If the ZERG wanted us to interpret it that way, it could have said this is it and no other additional coverages apply. That's not how this policy is written, and that's not how, if you look at the debris removal coverage and the construction forms coverage, it is written. Again, they are conditioned upon there being first a covered cause of loss. And we argue that to interpret this policy exclusion language, and you turn to the policy exclusion language, it contains language that first blanketly excludes all backup, all damage for sewer backup, blanket exclusion. But you have to read the policy provision as a whole. ZERG would like you to stop there and say excluded, but it's written that way for a reason. The exclusion language is then immediately followed in the same way by the additional coverage. And it's very, very important to look at the exclusion language and compare it, the exclusion language found in B1E4 on page 827, and compare that with the additional coverage in A4D on page 823. First, the exclusion and the exception language read the same. The blanket exclusion says loss or damage caused by water that backs up or overflows from a sewer drain or pump is excluded. Then the exception language says the exact same thing. Water, loss or damage caused by water that backs up or overflows from a sewer drain and pump is covered. So if you read this provision together, you've got this is excluded, except when it's covered. And it is covered. So there's nothing left to be excluded. Under no exception, it's completely covered by this exception. And we cited in our brief the Brochu case, where that the Illinois Supreme Court found that an exclusion, excuse me, an exception in exclusion can create coverage. So it's important to also note that the only place in the whole coverage form where the additional coverage for sewer backup and overflow is found is in this exception. That's where it's created. It's not anywhere else. If it wasn't there, there wouldn't be any coverage for that. And we turn to, again, to Zurich's interpretation of this exclusion language. Zurich's broad interpretation, ignoring the exception language, is contrary to the provisions, excuse me, the principles of policy interpretation set forth by courts in Illinois. Courts do not favor finding exclusions that operate to deny coverage to an insurer. The well-established principles include if an exclusionary clause is relied on to deny coverage, then its applicability must be clear and free from doubt. The burden is on the insurer to prove an exclusion applies. Any policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are definite and specific. It's assumed that the insured intended coverage and the insurer would have stated all exclusions clearly and specifically. And again, getting back to reading the policy provisions together, I kind of went right into this exclusion, but, you know, one of the primary arguments is reading the coverage grant in this policy. I mean, as we have extensively argued, the coverage grant provides that Zurich only has to pay for loss to cover property from a covered cause of loss. Zurich paid $25,000, and it has never adequately explained how it can reconcile saying there's no covered cause of loss, but we pay $25,000 on one hand, with the language of the coverage grant on the other hand. The coverage grant is found on page 822 at the start of the coverage section, section A coverage. It's the very first sentence. It governs everything after that in section A. Additional coverage is the definition of covered cause of loss. It says we will pay for direct physical loss or damage to covered property from any covered cause of loss. Everything else comes after that. And we've never gotten an adequate explanation why they pay for a covered cause of loss. They pay and say it's not a covered cause of loss. For Zurich to take this position, we really have to conclude they either gratuitously paid when they didn't have to, which they claim they did not, or Zurich would like this court to ignore the coverage grant or to read language in the coverage grant that's not there. If Zurich wanted to say we'll pay for covered cause of losses and we'll also pay separately additional coverage for sewer backup and overflow, even though it's not a covered cause of loss, it could have said so. It didn't. That's not how this policy reads. The only reasonable interpretation is that there is no exclusion for sewer backup and overflow and that the loss is a covered cause of loss. Because there's a covered cause of loss, both the debris removal and construction forms coverage do apply to this loss. There's no question that construction forms were destroyed. They have up to $50,000 under the supplemental declaration. And there's no question that debris had to be, the mud had to be dug out, the water had to be extracted, the foundation work had to be redone. There's no question there's debris removal coverage here. We did allow coverage for backup, but we wanted to, our intent in drawing this policy was to limit any damage whatsoever from that backup to $25,000. It didn't. If that was the intent of Zurich, that's what they claim, that's not how these policy provisions read together. I don't know how that's reconciled with the coverage grant and I don't know how that's reconciled with no exclusion, you know, being left in the exclusion by the exception. There's nothing left. If you're saying what's excluded? I have this, I have covered cause of loss, which is all coverage, broad, all these specific exclusions in section B. And I want to say what's specifically excluded? Because that's what I have to go on. Everything's covered unless it's excluded. And I look at this exclusion and it says sewer backup excluded except for the additional coverage, which takes away the whole exclusion. There's nothing excluded left. Every single damage due to sewer backup is covered. So how is there an exclusion from coverage? It's just not there. I understand they wish it was there, but then write your policy there. This is Zurich's policy. If Zurich intended that, they had ample opportunity to make those provisions in the policy and they just didn't. We believe then that the policy provisions here at issue are unambiguous and support a determination that the loss is a covered cause of loss and Mr. Foley is entitled to the additional recovery under these additional coverages that he has. A second and alternative argument is at a minimum we presented a reasonable interpretation of the policy. Again, the well-established principles of policy interpretation must be followed here. Where a policy language is susceptible of more than one reasonable interpretation, an ambiguity exists. Ambiguities and doubts in an insurance policy are to be resolved in favor of the insurer and must be strictly construed against the insurer, especially those that appear to exclude coverage. And where there are competing reasonable interpretations of the policy, the court is not permitted to choose which interpretation to follow. In such circumstances, the court must construe the policy in favor of the insurer and against the insurer that drafted it. So these principles require a determination that the ambiguities and doubts must be resolved in favor of Mr. Foley and against Zurich. I'd like to just turn briefly to the decision of the circuit court. In granting summary judgment in favor of Zurich, it appears that the circuit court did not apply the proper standards of policy interpretation. First, Judge Manchinick's ruling provided no interpretation whatsoever of the various terms and provisions of the policy. Second, he appears to have based his decision on the out-of-state cases cited by Zurich and be more persuaded by Zurich's out-of-state cases than Mr. Foley's out-of-state cases. He states in his conclusion, which is at A9 of the appendix, this court does conclude that the logic and reasoning found in defendant's proper authority to be persuasive. That the court found the cases by defendant persuasive is not the proper standard for decision on summary judgment in this case. For the court to rule in favor of Zurich on summary judgment, the court must find not merely that it's persuaded by Zurich's position, but that Zurich's position is the only reasonable interpretation. Again, with reasonable competing interpretations, the court is not permitted to choose which one it will follow. Instead, the court must construe the policy in favor of Mr. Foley and against Zurich. In closing, Mr. Foley expected what all insurers expect when they buy an insurance policy, which is that the court interprets its own policy. They buy the policy, they dutifully pay the premiums, a loss happens, the insurance company pays the insured for the damages, and the insured uses those proceeds to repair the damages. Zurich wants to turn this process into something totally different. The insured still buys the policy and dutifully pays the premiums. But when a loss happens, the insurance company interprets its own policy in any way possible to deny or limit coverage. The insured then has to pay for repairs out of its pocket to the extent it can afford to do so. The insurance company keeps the money it withheld, and the insured has to file a lawsuit to get the coverage to which it's entitled. This court should not allow Zurich or any other insurance company to move the goalposts back on consumers like Mr. Foley and flip the well- established principles of policy interpretation on its head. In conclusion, as for count one of the complaint, whether the policy provisions at issue here are determined to be unambiguous or ambiguous, the result is the same. The loss is a covered cause of loss, and Mr. Foley is entitled to recovery under the debris removal and construction forms coverage. As for count two of the complaint, in granting Zurich's motion for summary judgment on count two, which was the bad faith under section 155 of the insurance code, Judge Manchinick specifically stated in A11 of the appendix, pursuant to the disposition of count one, this court enters judgment in favor of defendant on count two. If the decision of this court, then, is to reverse on count one, the decision of the circuit court as to count two should also be reversed. Are there any other questions? So just finally, we request that this court reverse the ruling of the circuit court granting summary judgment on count one and count two of the complaint, grant summary judgment in favor of Mr. Foley on count one of the complaint, and remand the case for further proceedings on count two since it was never considered on its merits. Thank you. Good morning, Justices. Thank you very much for your time today. I'll try to keep my comments as brief as possible. I'd like to begin, obviously, by thanking the panel, thanking the counsel. We maintain a very professional and unambitious regard for the counsel. I would like to bypass some of the facts, but I think there are a few things I would like to address, and of the arguments made by the appellant. And that's that I also agree, and American Zurich also agrees, that this is a straightforward application of a very common policy term. I do not think that there's any ambiguity here, which I know was appellant's primary argument, that there's no ambiguity in finding coverage. But we believe that the only reasonable, and the trial court agreed with this, the only reasonable interpretation of this policy and the exclusion for water that overflows for a sublimit is to couple the two provisions together. It is clearly excluded. Sewer and drain overflow is clearly excluded within the policy's exclusion section. That exclusion acknowledges that additional coverage can be purchased that will cover that risk. And if that occurs, policyholder looks to that additional coverage. What are the terms of that additional coverage? And in that case here, the one that is driving the bus here is the $25,000 limit for that type of damage. That does not alter in any way the definition of a covered cause of loss under the policy. It does not change the application of the exclusion. But it acknowledges that additional coverage can be purchased by the insured. And in this case, that was purchased by the insured, and American Zurich paid the policy limit for the damage that occurred as a result of that risk. That is in no way invalidating or accepting or revoking or removing the exclusion for sewer or drain overflow that's contained within the policy. It's acknowledging that the insured can purchase a separate type of coverage. There are a variety of different coverages that can be added to policy, and many of those were here. But the application of an additional coverage doesn't change the definition of a covered cause of loss. The appellants benefit here that the sewer and drain overflow coverage is not conditioned on the occurrence of a covered cause of loss, as the construction forms were and the debris removal additional coverages are. So... Here's the problem. We have a situation where you do have an exclusion for water backup, but then the insured says, I'm buying additional coverage. Now when one buys additional coverage, isn't that a covered cause? It does not render it. The term covered cause of loss is a capitalized term as defined in the policy, and it carries a tremendous amount of weight in the policy. That is a covered cause of loss. There are circumstances under which American Zurich will pay for damage to the insured property, even though the damage did not occur as a result of a covered cause of loss. And that is one example, of course, is the sewer and drain overflow that we're talking about here today. There are some other occasions where in the case of a covered cause of loss, the insured may be entitled to recovery, but it does not render the covered cause of loss as that term is defined in the policy. And that's the distinction I think is illustrative and was seized upon in the court in one of the cases that we cited, the Wichita Realty case, which I believe the courts are entitled to review and consider the rationale of other cases, but not that rendering their decision dependent upon or reliant upon that decision. Let's look at Section 4 of B. And what's excluded? It says water that backs up overflows from a sewer drain or sump, and it says except as provided in the back up or overflow sewers, drains, or additional coverage. So isn't that a covered cause of loss? Isn't that an exception from this exclusion, which then makes it a covered cause? You say we're going to exclude water that backs up, except when it comes from an overflow. So that's an exception from your exclusion. Now, we have ambiguity, and we've got to resolve it, as counsel said, in favor of the insured. But I don't believe it's an ambiguity, because to go directly to that language, this language is the, you know, if you read the contract, read the policy in terms of, it's saying we will not pay for a loss or damage caused directly or indirectly by, there's additional words, but if you did an ellipsis there, you would fast forward to water that backs up or overflows from a sewer drain or sump. But you don't stop? Exactly. If we did stop there, maybe that would be an ambiguity, because then you've got an exclusion and an additional coverage, and you couldn't harmonize the two. But because that sentence continues, and it says we don't pay for that, except to the extent provided in this other cover, in the additional coverage. So that then says what you need to look at if this talk, if this risk occurs to your property and causes some damage to it, you need to look to see what additional coverage you have. And that is set forth clearly in the policy as being subject to a $25,000 limit. There's nothing in this policy like there is in the Dream Spa or Troutman case relied upon by plaintiffs that deletes or removes this language. This is telling the court to read these in harmony, just like all these other cases. It's saying we don't pay for this, except for what additional coverage you've purchased. And that's, and American Zurich will contend that that clearly sets forth that then you look at the additional coverage, which happened here, which American Zurich did here, and that coverage is subject to a $25,000 limit. I don't agree, the term sublimit was used in Appellant's argument, and I don't believe that's accurate, but it's a limit for this additional coverage, and it was paid in full. Some of that paid for debris removal and construction form damage. But that's not covered, it's not paid under the additional coverage that it's for construction form or debris removal. That's not covered either. Part of the loss that was sustained by the plaintiff, they had the, it's undisputed that that was caused by sewer or water backup, and Zurich paid the limit for the damage that occurs as a result of that loss. But I don't know if, I do believe an additional coverage that Zurich would only pay in the event of a covered cause of loss. What I was trying to get at before is that that's not true. There are coverages available in the event of a covered cause of loss. There are circumstances in which the insured would be entitled to payment, even though something does not fall within the description of a covered cause of loss. This is one of those occasions. American Zurich honored its policy, paid the insured the full amount of its coverage. And did everything it could for its insured. We don't see any ambiguity here. We believe that in every case, the case is cited by, the DreamSpy case, the Troutman case, the Broku case, the Four Kids Only case, the Wichita Realty case, the court is being guided by the concept of let's look at what the policy reflects was intended to be covered here. Let's look at the case. This policy is written very much like the policies in Four Kids Only and in Wichita Realty, which recognize that that exclusion for sewer and drain backup creates a situation where a homeowner may suffer a loss that is, for a reason that is excluded. And it recognizes that that can be the case, but the insurance company can still sell a coverage that is covered under, with a different limit or with a different term. However, that's written out in the policy to cover that risk. And that can be part of the package of risks that are agreed to be insured between the insurer and the insured. That's what happened here. That's what happened in Four Kids Only. That's what happened in Wichita Realty. And that's exactly what we're getting. But that's the harmony that recognizes that this additional coverage covers this area that would otherwise be uncovered, but it doesn't render this a covered cause of loss for purposes of the policy. It doesn't change the definition of the covered cause of loss, because the covered cause of loss is, it says these will be any cause unless that cause is sewer and drain overflow. And that is included in the exclusion. It's not deleted. It's not removed by endorsement. It's not stricken or overwritten or superseded by any other language. That exclusion just acknowledges that the insured may go out and purchase an additional coverage to cover that risk. And if they do so, they have the coverage that they purchased in that additional coverage. That's exactly what happened here. And Zurich paid for that. It's not covered. It would not be covered. If they had sat down and the insured said, I want to save some money, I don't want to buy, I don't want to pay the extra premium for that additional coverage for sewage and water backup, then there would be no coverage for sewage and water backup. And the policy would remain the same, except there would just be a zero on the declarations page for that coverage amount. The policy would still say there's no coverage, except if you bought the additional coverage, then you've got exactly what that additional coverage provides, which is $25,000. And so that, I don't believe is an exception to an exclusion. It's a separate right that the insured gets under the policy. And America, Zurich, and the insured, they're abided by that right. They drafted this policy to reflect that right. I would posit, if we did have a period at the end of we will not pay, and we didn't acknowledge that additional coverage could be purchased, then what would you do if there was additional coverage and something indicated? Then you will have a conflict between the terms of the policy, acknowledging the existence of potential additional coverage, and if the insured avails themselves of that coverage, they are entitled to coverage pursuant to the terms of that additional coverage that they obtained. It looks to us here on the facts, that's the kind of loss that happened here. American Zurich paid its limit for what it would, the maximum limit it would pay for that type of loss. And that's the only reasonable interpretation of the terms of this policy. As to, maybe going along here, as to count two, we agree with, we stand on our briefs in terms of what we believe the standard of review should be. We would ask that at a minimum, the court should affirm the ruling as to count one, and count two, and at a minimum even as to count two, find that the trial court engaged in a thorough review of the facts, and even if this court does not agree with American Zurich's interpretation of the policy, that it find that it is certainly a reasonable one or not one taken in bad faith, and affirm the trial court's ruling. And that's why we're allowing us to count two on that ground, if not for the same reasons granted in the trial court. If there are any questions, I'd be happy to try to answer them. Thank you. Thank you. Zurich is trying to paint this additional coverage, which is plain in this policy, it's not an endorsement that was purchased separately to try to address an exclusion. It's right here listed in Section 8 of the Federal Code. It's not an endorsement for under the heading coverage, part of the coverage grant. It lists all these additional coverages. The insured can go out and say, oh, this is excluded, and now I want to buy this additional coverage. To accept Zurich's reading, you have to look at this additional coverage and say, it stands alone. I don't read it with the coverage grant. I don't read it with the exclusion. I just read this alone, and this provides some additional coverage, and that's it. That's not how this court is guided to interpret the policy. It just, it's not how this policy is written. It's not an endorsement. It's not a stand-alone coverage. And it's not conditioned upon a covered cause of loss, because it is the covered cause of loss. It doesn't have to be. Again, I'm not saying that Mr. Foley gets, he gets $25,000 for his expenses that have to do with the foundation digging or the additional gravel that now has to go in. That's $25,000. That doesn't mean he doesn't get debris removal and construction forms, and there's nothing in the language of the additional coverage for sewer backup that says, and no other additional coverage is applied. That's what they get for the rebuild on the foundation. But that's not all they get. And it doesn't say that. Zurich would like you to think that, but that's not what the policy says. So, again, we request that this court reverse judgment on count one and grant summary judgment in favor of the foundation. Zurich on count two, and reverse on count one and count two. Thank you. Thank you. You both argued very well in an area that I sure wouldn't want to be arguing, because I'm sure I'd mess it up. But in my conclusion, insurance policies are the hardest thing to understand that I've ever seen. Thank you.